IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TWILA CHRISTINE MILAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:18-cv-717-SRW |
| ) | |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

### I.  INTRODUCTION

On May 11, 2015, Plaintiff Twila Christine Milam filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging that she became disabled on March 24, 2015. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision dated October 12, 2017. Plaintiff appealed that decision and the Appeals Council denied Plaintiff's request for review on June 11, 2018. The ALJ's decision consequently became the final decision of the Commissioner of Social Security. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 12, 13. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court will affirm the Commissioner's decision.

## II. STANDARD OF REVIEW AND REGULATORY FRAMEWORK[2]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ,

---

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must]…scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's]…factual findings. … No similar presumption of validity attaches to the [Commissioner's]…legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239–1240.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 43 years old at the time she filed her application for benefits and was 46 years old at the time of the ALJ's decision. R. 23, 217. Plaintiff is a resident of Dothan,

4

Alabama. R. 37. She lives in an apartment with her fiancé. R. 16, 40. She earned her GED and certified nurse assistant degree. R. 45, 251–252.

In March 2015, Plaintiff was hit by a truck and was hospitalized for a period of time following the accident. R. 16–17, 381–382. Plaintiff maintains that her ability to work is limited by "broken hips, broken pelvis, depression, anxiety, back pain, severe headaches, obesity, high blood pressure, [and] blood clots." R. 250. Plaintiff's past relevant work was as a certified nurse assistant, companion, and janitor. R. 45–54, 68, 239, 252.

Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since May 11, 2015, the application date[.]"[4] R. 13. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "morbid obesity; pelvic fracture (post-motor vehicle accident); and degenerative changes of the medial compartment of the left knee[.]" *Id*. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" R. 15. Next, the ALJ articulated Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary[5] work as defined in 20 CFR 416.967(a). Specifically, the claimant can lift 10 pounds occasionally and less than 10 pounds frequently. She can carry 10 pounds occasionally and less than 10 pounds frequently. She can sit six hours, stand two hours, and walk two hours. She can push/pull

---

[4] Although Plaintiff alleged an earlier onset date, for SSI benefit purposes, she must establish disability as of the application date. Therefore, the relevant period for Plaintiff's SSI application is the month in which she filed her application through the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330; 416.335.

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

as much as she can lift/carry. She can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. Her time off-task includes in addition to normal breaks, off task 5% of time in an 8-hour workday. She would likely be absent from work one day per month.

R. 16. At Step Four, based upon the testimony of a VE, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." R. 22. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as an addresser, document preparer, and call-out operator. R. 23, 69. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since May 11, 2015, the date the application was filed[.]" R. 24.

## IV. DISCUSSION

On appeal, Plaintiff claims that "[t]he Commissioner's decision should be reversed because the ALJ's step two findings are not supported by substantial evidence." Doc. 15 at 3. Specifically, Plaintiff assigns as reversible error the ALJ's "fail[ure] to find a number of [her] disorders to be severe" including "psychiatric disorders … cervical degenerative disc disease, and bilateral deep vein thrombosis." *Id*. at 5. The Commissioner counters that "the objective medical evidence, the reports of Plaintiff's functioning, and the lack of evidence showing Plaintiff complained of significant symptoms with regard to her neck or deep vein thrombosis (DVT) support the ALJ's decision not to list her psychological impairments, DVT, or a neck impairment among Plaintiff's severe impairments." Doc. 18 at 4.

An impairment or combination of impairments is "severe" if it "significantly limits [Plaintiff's] physical or mental ability to do basic work activities" and persists for at least

6

twelve consecutive months. 20 C.F.R. §§ 416.920(c); 416.905(a). Plaintiff bears the burden to prove that an impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, acting as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Id*. When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. *Id*.; 20 C.F.R. § 416.945(a)(2). The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC. *Tuggerson-Brown*, 572 F. App'x at 951–952. Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At step two in this case, the ALJ found that Plaintiff has the severe impairments of morbid obesity, pelvic fracture (post-motor vehicle accident), and degenerative changes of the medial compartment of the left knee. R. 13. The ALJ also found that Plaintiff has non-severe impairments including depression, anxiety, headaches, hypertension, and diabetes

mellitus. R. 14–15. Because the ALJ found that Plaintiff has at least one severe impairment, she was not required to identify all of Plaintiff's severe impairments before moving to step three of the sequential evaluation process. *See Tuggerson-Brown*, 572 F. App'x at 951–952.

Having found that the ALJ did not err at step two, the court must address the question of whether the ALJ considered all of Plaintiff's impairments, regardless of severity, in performing the next steps of the sequential evaluation process. Plaintiff contends that the ALJ did not adequately address her psychological impairments, primarily depression and anxiety, or her diagnoses of cervical degenerative disc disease and DVT. Doc. 15 at 5–9. However, the ALJ specifically stated that she considered "all" of Plaintiff's symptoms, and "all the evidence," including the "combined effects of all the claimant's medically determinable impairments." R. 16. These statements sufficiently demonstrate that the ALJ considered all of the necessary evidence. *See Tuggerson-Brown*, 572 F. App'x at 951–952.

Moreover, with respect to depression, the ALJ in fact discussed Plaintiff's symptoms and limitations in detail. In evaluating whether Plaintiff's psychological impairments met the "paragraph B" criteria for evaluating mental disorders, the ALJ found that Plaintiff had no more than mild limitations in the areas of understanding, remembering, or applying information; adapting or managing oneself; concentrating, persisting, or maintaining pace; and interacting with others. R. 14–15. In making these findings, the ALJ credited evidence in the record that included Plaintiff's sister's report that Plaintiff engages with others through texting and social media, goes out to visit family, goes out in public to the grocery store, and handles her finances, as well as Plaintiff's self-reports of socializing

with friends and family, doing word searches, preparing simple meals, and washing dishes while sitting. R. 272–273, 291, 315.

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's testimony that she suffered from depression and anxiety. R. 17. The ALJ also evaluated Plaintiff's mental health treatment records, noting that they "reveal generally unremarkable mental status examinations." R. 15. For instance, the ALJ observed that on September 17, 2015, Plaintiff presented to the Holmes County Health Department to establish primary care. R. 18, 480–481. Although Plaintiff reported a history of depression, upon assessment, it was noted that she was in "no apparent distress" and showed appropriate mood and affect. *Id*. The ALJ observed that during Plaintiff's December 2015 assessment at Life Management of NW Florida, a mental health treatment center, she reported worsening depression since the time she was hit by the truck, nine months earlier. R. 18, 483–501. However, her mental status examination was unremarkable except for anxious, depressed mood, and continued to be unremarkable in follow-up visits. *Id*.

The ALJ also reviewed and afforded great weight to the opinions of non-examining State Agency psychological consultants James Mendelson, Ph.D., and Jane Cormier, Ph.D. R. 20. Doctors Mendelson and Cormier reviewed Plaintiff's medical record and found evidence of no more than mild mental limitations. R. 80–82, 97–99. Finally, the ALJ gave great weight to the opinion of Dr. Kenneth Long, a consultative psychological examiner. R. 15, 17–19. Plaintiff complained to Dr. Long of anxiety and depression related to her physical conditions; however, her mental status examination was generally unremarkable except for a depressed mood. R. 19, 475–476. Dr. Long recommended that Plaintiff continue with treatment for depression and consider counseling "to more fully address both

9

mood and unresolved trauma," but did not otherwise determine that Plaintiff had functional limitations due to her mental symptoms. R. 19, 473–476.

Based on Plaintiff's mental health treatment records and Dr. Long's consultative examination, the ALJ reasoned:

> Regarding [Plaintiff's] depression and anxiety, as noted above, she would go months without counseling and medications, thereby demonstrating only mild symptoms. When she did receive treatment, she consistently reported doing better with medications. Accordingly, [Plaintiff's] statements have been found to affect [her] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. The level of limitation supported by the evidence of record is reflected in [Plaintiff's] residual functional capacity.

. . .

> As for the opinion of the consultative examiner, Dr. Long, I give this opinion great weight. Dr. Long is a specialist in the area and therefore, his opinion is entitled to more weight. Dr. Long is also an examining physician whose findings are supported in the record… . Dr. Long's diagnostic impression included unspecified depressive disorder (by history), but ruled out post-traumatic stress disorder. [Plaintiff] reported that she suffers from depression and anxiety attacks because she fears of her safety. However, other than [Plaintiff's] complaint of depression, the record shows that her depression has not affected [her] functional abilities as she contends.

R. 19–20.

As set out above, the ALJ thoroughly discussed Plaintiff's alleged psychological impairments, including depression and anxiety, and provided a thorough explanation for the RFC findings. The court finds that the ALJ adequately considered Plaintiff's alleged psychological impairments in formulating her RFC.

Plaintiff also contends that the ALJ erred by failing to saddress her cervical degenerative disc disease and DVT specifically. Doc. 15 at 2. With respect to the alleged neck impairment, the court notes that Plaintiff did not allege she was disabled due to a neck impairment when she filed her claim and made no mention of neck pain at the hearing. R.

55, 250, 291. Plaintiff's allegation of a neck impairment appears to come solely from a March 2015 cervical spine CT scan showing neural foraminal stenosis and a "[p]rominent osteophyte production projecting into the spinal canal at C5-6[.]" R. 410. Although the ALJ did not specifically discuss this medical report, she was not required to do so. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection … [of the] 'medical condition as a whole.'" (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Moreover, Plaintiff has failed to point to any evidence in the record that she suffers a *functional limitation* due to her alleged neck impairment. "[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933, at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also Osborn v. Barnhart*, 194 F. App'x 654, 662 (11th Cir. 2006) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.") (quoting *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986)).

Plaintiff's complaint that the ALJ did not address her DVT fails for the same reason. The ALJ did in fact note that Plaintiff's discharge diagnosis following the March 2015 motor vehicle accident included DVT. R. 17, 380–382, 412. The ALJ also remarked at the hearing that Plaintiff's DVT was non-severe. R. 37. Plaintiff points out that the ALJ made a "solitary mention" of her DVT in reviewing the medical records. Doc. 15 at 9. However, Plaintiff's diagnosis of DVT appears to be an isolated event for which she was prescribed

11

medication. R. 412. Aside from the lone diagnosis, Plaintiff has failed to point to any evidence in the record that her DVT causes functional limitations. *See Crans*, 2017 WL 4683933, at *5. The ALJ was not required to discuss this evidence in any more detail than she did.

The ALJ sufficiently discharged her duty in reviewing the medical evidence and determining whether and how Plaintiff's impairments affect her ability to work. The ALJ's decision articulates the basis for the RFC and cites to substantial supporting evidence in the record. Although Plaintiff has pointed to evidence in the record that she contends supports a different result, it is not the court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x. 670, 671 (11th Cir. 2017). The court discerns no legal error in the ALJ's consideration of the evidence of record, or in her explanation of the decision.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is supported by substantial evidence and the proper legal standards were applied. Thus, the Commissioner's decision will be AFFIRMED. A separate judgment will issue.

DONE, on this the 16th day of October, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge